UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

PENNY K. COULTER
    Plaintiff

v.                                                                                                                             No. 1:13-CV-00011-LLK

CAROLYN W. COLVIN
    Commissioner of Social Security
    Defendant

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(c), to conduct all further proceedings in this case, including entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. Docket Entry Number (DN) 10.

The fact and law summaries of the Plaintiff and the Defendant are at DN 12 and DN 13, respectively. Mary G. Burchett-Bower represents Plaintiff. The final decision of the Commissioner, which is presently before this Court upon judicial review, was rendered on July 29, 2011, by Administrative Law Judge (ALJ) Scott M. Staller. Administrative Record (AR), pp. 31-42.

For the reasons below, this matter is REMANDED to the Commissioner for a new decision and further administrative proceedings regarding the current availability of jobs in the national economy that Plaintiff can still perform despite her impairments and for reconsideration Plaintiff's ability to reach overhead and use of her left upper extremity in light of the treating source medical opinions.

### ALJ's Decision

The ALJ denied Plaintiff's disability claim at the fifth and final step of the sequential evaluation process. At step 5, the burden of proof "shifts to the Commissioner [to] identify a significant number of

1

jobs in the economy that accommodate the claimant's residual functional capacity [RFC] and vocational profile." *Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir.2011).

In support of his fifth-step denial decision, the ALJ relied upon testimony from a vocational expert (VE). The VE testified that an individual having an RFC for a limited range of sedentary work would retain the ability to perform a significant number of jobs in the national economy. Representative examples included surveillance systems monitor, sorter, and fishing reel assembler (AR, p. 41):

* surveillance systems monitor, described by Dictionary of Occupational Titles (DOT) code number 379.367-010 as sedentary in terms of exertion and unskilled (SVP 2) [specific vocational preparation number of 2], numbering 80,000 jobs in the national economy and 3,000 in the state of Kentucky;

* sorter, described by DOT code number 209.687-022 as sedentary in terms of exertion and semi-skilled (SVP 3), numbering 3.5 million jobs in the national economy and 65,000 in the state of Kentucky; and

* fishing reel assembler, described by DOT code number 732.684-062 as sedentary in terms of exertional and unskilled (SVP 2), numbering 253,000 jobs in the national economy and 3,000 in the state of Kentucky.

### *Cunningham v. Commissioner*

The Plaintiff's principal contention upon judicial review is that the ALJ's fifth-step findings are not supported by substantial evidence. Step 5 requires a finding of current availability of jobs in the national economy.

For essentially the same reasons outlined in *Cunningham v. Commissioner*, 360 Fed.Appx. 606, 2010 WL 22286 (6th Cir.), the jobs identified by the ALJ do not satisfy the Commissioner's burden of proving that a significant number of jobs exist in the national economy that Plaintiff can perform.

In *Cunningham*, the ALJ accepted the VE's identification of jobs described in the DOT and found that Cunningham retained the ability to perform the jobs of security camera monitor and document preparer. *Cunningham* observed that the DOT, a document published by the Department of Labor, was dated and obsolete at the time of the ALJ's decision. "While the Social Security Commissioner does take

2

administrative notice of this document when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted." *Id.* at *9.

The "security camera monitor" position mentioned in *Cunningham* is the same "surveillance systems monitor" job in the present case.[i] *Cunningham* determined that this job and that of document preparer appear to be obsolete and remanded the matter to the Commissioner for reconsideration in light of the DOT's replacement, known as the O*NET:

> In light of the fact that more current job descriptions were available at the time of the hearing before the ALJ -- the Department of Labor replaced the DOT with the Occupational Information Network (O*NET), a database that is continually updated based on data collection efforts that began in 2001 -- and that the two descriptions relied on by the VE are not found in O*NET, we conclude that the VE's dependence on the DOT listings alone does not warrant a presumption of reliability. E.g., O*NET Resource Center, http:// www. onetcenter. org/ data Collection. html (last visited Jan. 4, 2010). As such, we remand to the Commissioner for consideration of whether the DOT listings, specifically the document preparer and security camera monitor descriptions, were reliable in light of the economy as it existed at the time of the hearing before the ALJ.

The jobs of sorter[ii] and fishing reel assembler[iii] in the present case appear to be as obsolete as the job of document preparer[iv] in *Cunningham*. These jobs are not listed in the O*NET. Therefore, as in *Cunningham*, a remand is required for new step 5 findings addressing the current availability of jobs in the national economy that Plaintiff can perform.

**Occasional Reaching**

The ALJ found that Plaintiff has an RFC to "only occasionally reach and reach overhead with her left upper extremity" (AR, p. 35). However, according to the DOT, the jobs of sorter and fishing reel assembler require frequent reaching 1/3 to 2/3 of the work day. Upon remand, if the Commissioner determines that these jobs currently exist in significant numbers in the national economy, the Commissioner should address this apparent inconsistency.

**Treating Physician Rule**

Plaintiff argues that the ALJ's decision does not comport with the so-called "treating physician" rule.

Under that rule, in making a disability determination, the ALJ evaluates every medical opinion received, but is required to give controlling weight to the treating physician's opinion on the nature and severity of the impairment, provided that the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ does not give controlling weight to the treating source's opinion, the ALJ must then consider and balance the following factors to determine how much weight to give the opinion: length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; extent to which the opinion is supported by relevant evidence; extent to which the opinion is consistent with the record as a whole; and whether the treating physician is a specialist in the area on which the disability claim is based. 20 C.F.R. §§ 404.1527(c)(1) – (6).

The ALJ also has the obligation to provide "good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Thus, if the ALJ does not give controlling weight to the treating source's opinion, he must: (1) clarify whether the treating source's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques or was inconsistent with the other substantial evidence in the case record and identify the evidence supporting such a finding; and (2) explain his application of the factors listed in 20 C.F.R. § 404.1527(c)(2) to determine the weight to give to the treating physician's opinion. *Wilson v. Commissioner*, 378 F.3d 541, 546 (6th Cir.2004). The ALJ's explanation must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight." Social Security Ruling (SSR) 96-2p, 1996 WL 374188 at *5.

**Dr. Malmquist's Opinion**

The ALJ's evaluation of the weight given to the opinions of Plaintiff's treating physicians, Gregg Malmquist and Grover Dils, does not comport with treating physician rule as described above.

On October 26, 2009, Dr. Malmquist performed a subacromial decompression of the left shoulder with open rotator cuff repair (AR, p. 257). On April 9, 2010, Dr. Malmquist opined that Plaintiff is permanently restricted to lifting no more than 10 pounds occasionally with the left hand and no overhead reaching with the left arm (AR, p. 393). The ALJ gave this opinion "little weight" because "[t]he undersigned has considered Dr. Malmquist's opinion and accords little weight to those limitations consistent with the decision herein, which limitations are supported by the objective medical evidence of record" (AR, p. 39).

The foregoing rationale is inadequate because the residual effects of left shoulder replacement with x-rays showing cemented hemiarthroplasty in place and mild degenerative changes at the acromioclavicular (AC) joint (AR, p. 294) provided an objective medical basis for the limitations opined by Dr. Malmquist.

The "objective medical evidence of record" (AR, p. 39), which the ALJ indicated was contrary to Dr. Malmquist's opinion, was provided by the non-examining program physician, who opined that Plaintiff should have no significant left-arm restriction as "projected to 12 months post [surgical] repair" (AR, p. 369). The ALJ's decision to credit this non-examining source projected opinion over the actual opinion of the surgeon (Dr. Malmquist), given 12 months after the surgery, is unpersuasive.

**Dr. Dils' Opinion**

On or about June 22, 2011, Dr. Dils signed off on an assessment prepared by Gwen Wright, APRN (advanced practice registered nurse), to the effect that Plaintiff has a history of left shoulder replacement and heel spurs, making it difficult for her to walk or stand for long periods of time or use her hands for product jobs or activities (AR, p. 509). The ALJ discounted Dr. Dils' opinion because "a

5

nurse practitioner is not considered an acceptable medical source according to Social Security regulations<sup>v</sup>" (AR, p. 39).

This rationale is insufficient because "[w]hen such [non-acceptable medical source] opinions are adopted by the treating physician, they should be elevated to opinions of an 'acceptable medical source' and treated as such." *Goins v. Commissioner*, 2008 WL 4066095, *4 (W.D.Ky.).

In addition, even if the ALJ was justified in treating the opinion as Ms. Wright's (as opposed to Dr. Dils' by way of adoption), the ALJ was not entitled to dismiss Ms. Wright's opinion on that basis alone. The Commissioner has recognized that:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939 at *3.

The ALJ's decision fails to identify an adequate legal basis for discounting the opinions of the treating physicians.

**Date Last Insured**

Plaintiff argues that the ALJ's Finding No. 1 that she meets the insured status requirements of the Social Security Act through December 31, 2013 (AR, p. 33) is erroneous and that, in fact, she is insured through December 31, 2014.

Any error in this regard was harmless as the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision issued on July 29, 2011 (AR, p. 41).

6

**ORDER**

For the foregoing reasons, this matter is REMANDED to the Commissioner for a new decision and further administrative proceedings regarding the current availability of jobs in the national economy that Plaintiff can still perform despite her impairments and for reconsideration Plaintiff's ability to reach overhead and use of her left upper extremity in light of the treating source medical opinions.

---

[i] According to DOT 379.367-010, a surveillance system monitor monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.

[ii] According to DOT 209.687-022, a sorter sorts data, such as forms, correspondence, checks, receipts, bills, and sales tickets, into specified sequence or grouping, such as by address, code, quantity, and class, for such purposes as filing, mailing, copying, or preparing records. May be designated according to work performed as Bill Sorter (clerical); Sales-Slip Sorter (clerical).

[iii] According to DOT 732.684-064, a fishing reel assembler assembles fishing reels, performing any combination of following tasks: Positions parts, such as washers, levers, springs, line spool, and retaining rings, in slots, holes, or over pins provided on frame of fishing reel. Inserts drive shaft through line spool and frame bearing. Positions side plate assembly containing gears and crankshaft on frame, aligns screw holes, and screws assembly to frame, using powered screwdriver. Places crank on crankshaft and tightens nut with wrench to fasten crank to shaft. Screws parts, such as control knobs and case covers, to frame. Tests and adjusts reel for unrestricted, positive movement of parts by performing such tasks as rotating reel crank, pulling fishline off spool, and turning adjustment screws or knobs located on reel. May disassemble reel, realign parts, and remove burrs to rework defective reels, using handtools. May operate arbor and kick presses to perform such tasks as forcing bushings into reel frames, riveting parts to subassemblies, and pressing or staking gears on shafts.

[iv] According to DOT 249.587-018, a document preparer prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

[v] According to 20 C.F.R. § 404.1513(a) the only acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.